IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN SHAFIK, ROCKWOOD STRATEGIES, LP, and ANDREW EMERICK, | : : : : | |
| Plaintiffs | : : | Civil Action No. 1:09-cv-02469 |
| v. | : : : | (Chief Judge Kane) |
| JOHN F. CURRAN, III, Defendant | : : : | |

## MEMORANDUM

On December 15, 2009, Plaintiffs Ryan Shafik, Rockwood Strategies, L.P. (hereinafter "Rockwood"), and Andrew Emerick filed the instant action against Defendant John Curran in this Court. (Doc. No. 1.) The complaint alleges breach of contract for Defendant's failure to make payments pursuant to a contract for Plaintiffs to perform campaign services for Defendant's prospective senatorial campaign in the state of Maryland. The complaint also alleges fraud, defamation, and intentional infliction of emotional distress ("IIED") for other actions committed by Curran with respect to Plaintiffs' participation in the campaign. On February 16, 2010, Defendant filed the pending motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. No. 6.) For the reasons that follow, the Court finds that Plaintiff Emerick's claims will be dismissed for lack of personal jurisdiction as to Emerick's claims over Curran; Plaintiff Shafik's defamation claim will be dismissed for lack of personal jurisdiction; and in all other respects, the motion to dismiss will be denied.

I.  BACKGROUND

Beginning around August 2009, Defendant John Curran began to contemplate running for public office as United States Senator for the state of Maryland. In furtherance of this

1

ambition, Curran contacted Plaintiff Ryan Shafik, a campaign consultant and the owner of Rockwood Strategies. Curran and Shafik arranged to meet on August 3, 2009, in Gettysburg, Pennsylvania, to discuss the possibility of a working relationship wherein Shafik and Rockwood would advise Curran on his senatorial campaign. The Gettysburg location was a midway point between Curran's office in Westminster, Maryland, and Shafik's office in New Cumberland, Pennsylvania. At the meeting, Shafik explained to Curran what was needed to run a campaign and what services he and his company could perform for Curran. Shortly thereafter, Curran entered into a contract for Shafik and Rockwood to perform numerous services in support of his campaign.

On August 17, 2009, Curran requested that Shafik develop a strategic campaign plan with a limitless budget. Curran averred that he was willing and able to fund the campaign from his personal wealth of over $20 million. Shafik developed a campaign plan as instructed, and Curran approved the plan. Shafik immediately began making arrangements for Curran's campaign and incurring debt on behalf of the campaign. Specifically, as one service he provided for the campaign, Shafik recruited Plaintiff Andrew Emerick to serve as Curran's campaign manager. Shafik introduced Emerick to Curran in August 2009 at Curran's office in Maryland, at which point Emerick was interviewed for the position. During his initial discussion with Emerick, Curran again specifically represented that the campaign would run on a limitless budget, which he intended to fund with his own money. Emerick notified Curran that working as his campaign manager would require him to curtail his involvement with his family business. At the conclusion of the meeting, Curran hired Emerick to be his campaign manager. Emerick's contract provided that he would be paid a salary of $85,000 for services to be performed from

September 2009 through November 2010.

The parties continued to meet on a weekly or biweekly basis at Curran's office in Maryland. In between the physical meetings, Curran would contact Shafik on a daily basis by phone or by e-mail to discuss campaign details. Emerick immediately created a campaign office, began to hire additional campaign staff, and opened a campaign bank account. Curran promised to wire $100,000 to the campaign account by September 30, 2009, to pay for these and other initial arrangements and services. September 30, 2009, came and went with no funds deposited. Curran then promised to write a check in the amount of $200,000 to the campaign account on or before October 13, 2009. Curran defaulted on this promise, as well.

During the period from August to October, both Shafik and Emerick were performing services pursuant to their contracts with Curran and were incurring debt on behalf of the campaign. Curran promised to deposit money into the campaign account, but did not do so. On October 18, 2009, Curran terminated his relationship with Emerick, Shafik, and Rockwood through an electronic communication. The next day, Curran told certain donors and members of the press that he was still running for Senator, and he told others that he was not. Curran never payed Plaintiffs the sum of their contracts and did not reimburse them for expenses made on behalf of the campaign.

On December 15, 2009, Shafik, Rockwood, and Emerick filed suit against Curran in the Middle District of Pennsylvania. Though comprised entirely of state law claims, Plaintiffs allege that this Court has subject matter jurisdiction over the action by virtue of the diversity statute, 28 U.S.C. § 1332. The complaint states that Curran is a citizen of North Carolina, Emerick is a citizen of Maryland, Shafik and Rockwood are citizens of Pennsylvania, and the amount in

controversy exceeds $75,000. The complaint further states that venue in this district is proper because the services performed by Shafik and Rockwood, which form the bulk of this action, occurred within this judicial district.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction and improper venue. Though Defendants do not specifically move to dismiss the case for lack of subject matter jurisdiction, they allege that Curran is both a citizen and a resident of Maryland, thus complete diversity does not exist in this matter.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a court shall dismiss a complaint for lack of *in personam* jurisdiction. Fed. R. Civ. P. 12(b)(2). Rule 4(e) of the Federal Rules of Civil Procedure authorizes a court to assert personal jurisdiction over non-state residents to the extent Pennsylvania law allows. Fed R. Civ. P. 4(e). Pennsylvania law, in turn, authorizes personal jurisdiction to the fullest extent the Constitution allows. 42 Pa. Con. Stat. Ann. § 5322(b). The Due Process Clause allows a court to have personal jurisdiction so long as there are "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). From this overarching directive, courts have developed two avenues to establishing personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction is established by showing substantial and continuous contact with the forum state; specific jurisdiction may be established by showing the existence of sufficient minimum contacts with the forum state from which the pending cause of action arises. Id.

4

The plaintiff has the burden of establishing the existence of personal jurisdiction, but need only make a prima facie case of jurisdiction at this point in the proceedings. North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); In re Chocolate Confectionary Antitrust Litigation, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). A plaintiff must make such a showing through "sworn affidavits or other competent evidence." Id.

With respect to subject matter jurisdiction, a court has an affirmative duty to ensure that it has subject matter jurisdiction over the action at all points, and may raise the issue *sua sponte*. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010) (raising the subject matter jurisdiction issue sua sponte). Thus, "it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits." Id. at 418 (internal citations omitted). The party asserting diversity jurisdiction bears the burden of proof, and generally will meet this burden by proving diversity of citizenship by a preponderance of the evidence. McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006). Thus, a court is not obligated to rely solely on the facts alleged in the complaint or to take all well-pleaded facts as true for purposes of establishing diversity jurisdiction. Id. (discussing burden of proof and evidence a party must show to establish domicile for purposes of diversity jurisdiction).

**III.    DISCUSSION**

Defendant Curran argues that the Court lacks personal jurisdiction over him, and therefore the case must be dismissed. Plaintiffs concede that there is no general jurisdiction over Curran, but argue that Curran purposefully availed himself of Pennsylvania's laws and resources, such that this Court has specific personal jurisdiction over him with respect to the claims alleged.

5

Because subject matter jurisdiction in this case is prefaced on diversity jurisdiction and there is a dispute as to Defendant's citizenship, subject matter jurisdiction is also at issue. To determine the sufficiency and extent of the contacts between Curran and the Commonwealth of Pennsylvania, as well as Curran's place of domicile, the Court held a hearing on the issues on May 26, 2010. The Court will take up the personal jurisdiction issue first, followed by discussion of subject matter jurisdiction and venue.

### A. Personal Jurisdiction

In analyzing whether specific jurisdiction exists over a defendant, a court must determine whether the defendant has purposefully directed "minimum contacts with the state 'such that the defendant should reasonably anticipate being haled into court there.'" North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). A court must also determine whether the plaintiff's cause of action arises from these minimum contacts with the forum state. Marten v. Godwin, 499 F.3d 290 (3d Cir. 2007). The contacts must be more than merely the "but-for" cause of the claims advanced in the litigation; there must be a "meaningful link" between the contact with the forum and the legal obligations espoused in the complaint. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 320-24 (3d Cir. 2007) (declining to adopt a specific test, but finding that the causal connection between contact and claim must be "closer than mere but-for causation"). The final component in the jurisdictional inquiry is that jurisdiction over the defendant must "comport with traditional notions of fair play and substantial justice." Vetrotex CertainTeed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 148, 150-51 (3d Cir. 1996).

The case *sub judice* arises in part from a contract dispute between forum and non-forum

residents. In contract disputes, solicitation and formation of the contract itself are not dispositive. Rather, the Court must look to the totality of the circumstances. Telcordia Tech. Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006) ("In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances."). Moreover, whether the defendant is physically present in the forum state is not required, so long as the defendant "purposefully avails [him]self of the privilege of conducting activities within the forum state," thus invoking the benefits and protections of the forum state's laws. North Penn Gas Co., 897 F.2d at 690-91 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). Specific factors to consider in determining personal jurisdiction over a breach of contract claim are: the location and character of the contract negotiations, whether the non-resident solicited business from the forum state, whether the non-resident invoked and received benefits under the laws of the forum state, the contemplated future consequences of the contract, the terms and provisions of the contract, and the parties' course of dealing. Remick, 238 F.3d at 255-56; Vetrotex, 75 F.3d at 151; Empire Abrasive Equip. Corp. v. H.H. Watson, Inc., 567 F.2d 554, 559 (3d Cir. 1977); Strick Corp. v. A.J.F. Warehouse Distributors, Inc., 532 F. Supp. 951, 958 (E.D. Pa. 1982).

Determinations of personal jurisdiction are claim specific, which is to say that a finding that the court lacks personal jurisdiction over a defendant as to one claim does not necessarily imply that the court lacks personal jurisdiction over the same defendant as to other claims. Remick, 238 F.3d at 255. Therefore, the Court will independently assess not only whether specific jurisdiction exists as to the claims raised by each Plaintiff, but also whether specific jurisdiction exists as to all claims brought by each Plaintiff.

Shafik and Rockwood are bringing suit against Curran under both contract and tort. They allege breach of contract, fraud, defamation, and IIED against Curran. Plaintiff Emerick, likewise, brings breach of contract, fraud, and intentional infliction of emotional distress claims against Curran. The Court will first consider the claims brought by Shafik and Rockwood, followed by consideration of the claims brought by Emerick.

> i. **Rockwood's Breach of Contract Claims**

The Court begins by an examination of all the contacts involved in the breach of contract claim. Curran's relationship with Shafik and Rockwood began in August 2009, when Curran contacted Shafik, located in Pennsylvania, to determine whether Shafik and his company, Rockwood, would be a good fit to run Curran's potential campaign for senator. (Curran Aff. ¶ 8; Shafik Aff. ¶ 2.) On August 3, 2009, Defendant Curran met with Plaintiff Shafik in Gettysburg, Pennsylvania, to discuss how Shafik's services could benefit Curran's campaign. (Comp. ¶¶ 7-8; Curran Aff. ¶ 11.) Though the parties dispute the importance of the meeting, it is clear that an actual contract was not formed, but that details relating to Shafik's work for Curran's senatorial campaign were discussed. Shafik testified that the basic provisions of the contract were negotiated at the meeting, leaving only the details to be determined by written contract. (Curran Aff. ¶ 11-15; Evidentiary Hearing.) Yet, the contract that eventually formed was executed by Curran in Maryland. (Curran Aff. ¶ 29.) Additionally, no physical meeting aside from the initial meeting in Gettysburg occurred in Pennsylvania. (Curr. Aff. ¶ 34.) Curran did, however, contact Shafik via e-mail and telephone at Shafik's Pennsylvania office on a near-daily basis. (Shafik Aff. ¶¶ 10, 11; Comp. ¶ 12.) While Curran refutes the importance of those telephone contacts, he does not dispute that he telephoned and e-mailed Shafik at his Pennsylvania office or that these

8

calls were used to attend to details regarding the campaign. From the time Curran solicited Shafik's services through the duration of their relationship, Curran knew Shafik was a Pennsylvania resident, that Rockwood was based in Pennsylvania, and that Shafik worked out of an office in Pennsylvania. Shafik testified that the bulk of the work he performed in furtherance of the contract was done from Pennsylvania. For example, when Shafik solicited Emerick to interview for the position of Curran's campaign manager, he did so from Pennsylvania. Shafik organized the meeting between Emerick and Curran from his Pennsylvania office, though the meeting was to take place in Maryland. In short, Shafik has demonstrated, and Curran has not refuted, that all services Shafik performed pursuant to the contract were performed from Shafik's office in Pennsylvania. Last, Curran terminated his contractual relationship with Shafik and Rockwood by an electronic communication received by Shafik in Pennsylvania.

Curran attempts to diminish his initial outreach into Pennsylvania by emphasizing that he learned about Shafik's services from an acquaintance in Maryland. (Curran Aff. ¶ 9.) Yet, this intermediary contact is of no moment when Curran actually contacted Shafik in Pennsylvania. See O'Connor, 496 F.3d at 318 (stating that a plaintiff's claim that he heard about an out-of-state business from a friend within the forum state has no bearing on the personal jurisdiction analysis because the out-of-state business was not a party to the conversations). Considering that Curran made the initial contact between Shafik and himself, telephoning Shafik to solicit his services though he knew Shafik to be a Pennsylvania resident, Curran purposefully availed himself of the benefits of doing business in Pennsylvania. Indeed, though the initial meeting was Curran's only physical entrance into the Commonwealth, the minimal physical presence is offset by his multiple telephonic and electronic outreaches to Shafik within the forum state. See North Penn

9

Gas Co., 897 F.2d at 691 ("[T]he absence of a 'physical' presence by [a defendant] is once again not determinative of a lack of in personam jurisdiction when accompanied by facts indicating a purposeful availment."). Shafik's testimony at the hearing indicated that the parties' course of dealing was to have weekly or biweekly physical meetings in Maryland followed by substantial phone or e-mail contact in the intervening periods. Shafik also testified that Curran initiated the majority of those calls at his own convenience, knowing that Shafik was receiving them at his Pennsylvania office or residence. The Court finds that Rockwood and Shafik have established the minimum contacts necessary to indicate purposeful availment of the forum state, Pennsylvania, as to the breach of contract claims.

The Court also finds that those contacts are sufficiently related to the breach of contract claim to satisfy the specific personal jurisdiction analysis. As stated above, the contacts with the forum state must be more directly connected to the claims than the connection provided for by the "but-for" test. O'Connor, 496 F.3d at 323. For the contract claims, Shafik must establish that Curran's contacts with the forum were "instrumental in either the formation of the contract or its breach." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). The exposure that results from Curran's contacts with Pennsylvania must be "closely tailored to [those contacts'] accompanying substantive obligations." O'Connor, 496 F.3d at 323.

Shafik and Rockwood have established a prima facie case that the contacts set forth above were "instrumental" to both the contract and its breach in that the Gettysburg meeting created a broad outline of the contract, Curran's consistent calls and e-mails into Pennsylvania illustrated the work Shafik was doing pursuant to the contract, and Curran knew his communication terminating the contract would be received in Pennsylvania. In contemplating

Shafik's services in furtherance of his senatorial campaign, Curran would have known that Shafik's services would be performed, for the most part, from his Pennsylvania office.

Last, the Court finds that exercising personal jurisdiction would not offend traditional notions of fair play and substantial justice. Once a court has determined that minimum contacts exist, the court presumes that jurisdiction is constitutional, and the defendant bears the burden of establishing that the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. O'Connor, 496 F.3d at 324. Curran has provided no argument or evidence to suggest that the exercise of personal jurisdiction over him would be unfair or unjust in this case. Not only was Curran aware of Shafik and Rockwood's citizenship from his initial contact with him, but he claims residency of the neighboring state of Maryland, and he has provided an address that is within only a few miles of the Pennsylvania border. Any requisite travel to this forum for litigation does not appear to work an undue hardship upon him.

The Court finds that specific personal jurisdiction exists over Rockwood's breach of contract claims against Curran.

### ii. Shafik's Fraud, Defamation, and Intentional Infliction of Emotional Distress Claims

Shafik individually brings three claims against Curran: defamation, fraud, and IIED. With respect to specific personal jurisdiction over claims of intentional torts, the Third Circuit Court of Appeals has suggested that the "effects test," should be used. Remick, 238 F.3d at 258 (applying the "effects test" from Calder v. Jones, 465 U.S. 783 (1984) to intentional tort claims); Marten, 499 F.3d at 297 (same); Miller Yacht Sales Inc. v. Smith, 384 F.3d 93, 99 (3d Cir. 2004) (same). The effects test requires a plaintiff to make a prima facie case that the defendant committed an intentional tort, that the plaintiff "felt the burden of the intentional tort in the

forum," and that "the defendant expressly aimed his tortious conduct at the forum." Id. Simply asserting that the defendant knew or should have known that the plaintiff was located in the forum is insufficient for this test. Id. The plaintiff must demonstrate that the defendant "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum" and the defendant "manifested behavior intentionally targeted at and focused on the forum." Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007).

With respect to the fraud and intentional infliction of emotional distress claims, Shafik's allegations amount to the following: Curran knowingly stated that he intended to run for Senator, that he intended to fund his own campaign with any amount necessary, that he would wire Shafik the necessary funds, and that he intended to utilize Shafik's services for the duration of his campaign, all the while knowing that he had no intention of funding the campaign or reimbursing Shafik for his efforts. The Pennsylvania contacts Curran had with respect to these claims, then, tie him to Pennsylvania. Shafik has made a prima facie case that Curran knew Shafik operated from an office in Pennsylvania, and thus would bear the brunt of any failure to reimburse him for his efforts in the forum state. If Shafik failed to pay vendors he had contacted on behalf of the campaign, it is his Pennsylvania business and his Pennsylvania bank accounts that would suffer. While it is true that Shafik enlisted campaign staff and resources from outside the Commonwealth, Curran knew that Shafik conducted such services from his home office in Pennsylvania. Therefore, Shafik's allegations establish a prima facie case not only that Curran committed the intentional torts of fraud and IIED, but that Shafik felt the burden of those torts in Pennsylvania, and Curran aimed his tortious conduct at Shafik in Pennsylvania. As with the breach of contract claim, Curran has not set forth any evidence or argument to suggest that

12

personal jurisdiction in this forum would upset traditional notions of fair play and substantial justice, thus the Court finds personal jurisdiction as to these two tort claims, as well.

Turning now to Shafik's claim of defamation, however, the Court will grant Curran's motion to dismiss for lack of personal jurisdiction. To meet the effects test, Shafik has the burden of establishing that the tortious conduct, here the defamatory statements, was purposefully directed at Pennsylvania. As Shafik has not indicated anywhere in his complaint and did not state at anytime during the hearing where the allegedly defamatory statements were made, to whom the allegedly defamatory statements were made, what the defamatory statements were, or how the allegedly defamatory remarks impacted Shafik in the Commonwealth of Pennsylvania, he has not met his burden under the effects test. Accordingly, the Court finds that personal jurisdiction does not exist over Curran as to Shafik's defamation claim and the claim will be dismissed.

### iii. Emerick's Claims

The Court turns now to Plaintiff Emerick's claims against Curran. Emerick, a citizen of the state of Maryland, alleges breach of contract, fraud, and intentional infliction of emotional distress against Curran. (Comp. at 9-11.)

The facts provided in support of Emerick's claims can only be described as meager. Emerick was introduced to Defendant Curran on or about August 17, 2009, at a meeting at Curran's office in Maryland. (Id. ¶ 21.) That same day, Curran and Emerick agreed to an arrangement wherein Emerick would work as Curran's campaign manager for fourteen months at a salary of $85,000.00. (Id. ¶¶ 28-29.) Curran terminated his relationship with Emerick via e-mail. (Id. ¶ 46.) Though it is not specifically stated, it is implied that the correspondence was

13

sent personally to Emerick, and therefore was received and intended to be received in Maryland. No other locational facts with respect to any of Emerick's claims have been provided. Simply put, Plaintiff Emerick has provided no facts or allegations that would support personal jurisdiction over Defendant Curran in Pennsylvania.

Accordingly, all claims brought by Plaintiff Emerick against Defendant Curran must be dismissed for lack of personal jurisdiction.

### B. Diversity

Although Curran does not specifically raise the issue, the Court has an obligation to assure itself that it has subject matter jurisdiction over the complaint. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) ("Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" (internal citation omitted)); Frett-Smith v. Vanterpool, 511 F.3d 396, 399 n.3 (3d Cir. 2008) (discussing a court's obligation to dismiss the action if it at any point discovers that it lacks subject matter jurisdiction). The claims raised in the complaint are entirely state law claims, and Plaintiffs allege that this Court has jurisdiction over the state law claims pursuant to the federal diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction "requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." Zambelli, 592 F.3d at 418. Though Defendant Curran's citizenship is a point of contention, because the Court found that all claims brought by Plaintiff Emerick must be dismissed for lack of personal jurisdiction, any dispute as to complete diversity has been resolved. Diversity exists between Plaintiff Shafik and Defendant Curran, and the amount in

controversy is sufficient to indicate that this Court has subject matter jurisdiction in this case.

### C. Proper Venue

Defendant Curran asks, in the alternative, for the Court to dismiss the case pursuant to 12(b)(3) for improper venue. Title 28 United State Code § 1391 provides that cases founded upon diversity may:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

At argument, the parties relied upon their arguments in favor of or against the exercise of personal jurisdiction to weigh equally upon the venue question. As the Court set forth in detail above, many, if not the majority of, contacts between Shafik and Curran which give rise to the remaining claims for breach of contract, fraud, and IIED occurred in Gettysburg and at Shafik's offices in Pennsylvania. Accordingly, the Court finds that venue is proper in this judicial district.

## IV. CONCLUSION

The Court finds that Plaintiffs have met their burden of establishing, at this point in the proceedings, that personal jurisdiction exists over Defendant Curran with respect to Rockwood's breach of contract claim, Shafik's fraud claim, and Shafik's IIED claim. The remaining claims, including all claims brought by Plaintiff Emerick, will be dismissed for lack of personal jurisdiction. Defendant's motion to dismiss for improper venue will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN SHAFIK, ROCKWOOD STRATEGIES, LP, and ANDREW EMERICK, | : : : | |
| Plaintiffs | : : | Civil Action No. 1:09-cv-02469 |
| v. | : : | (Chief Judge Kane) |
| JOHN F. CURRAN, III, Defendant | : : : | |

## ORDER

**AND NOW**, this 16th day of June 2010, upon consideration of Defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 6), for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED in part** and **DENIED in part** as follows:

1. Defendant's motion to dismiss for lack of personal jurisdiction is granted as to all claims brought against him by Plaintiff Emerick;

2. Defendant's motion to dismiss for lack of personal jurisdiction is granted as to the defamation claim brought by Plaintiff Shafik;

3. In all other respects, the motion is denied.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania