UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RYAN SHAFIK, ROCKWOOD          :     **CIVIL NO. 1:09-CV-2469**
STRATEGIES, LP and             :
ANDREW EMERICK,                :     (Magistrate Judge Smyser)
                               :
          Plaintiffs           :
                               :
     v.                        :
                               :
JOHN F. CURRAN, III,           :
                               :
          Defendant            :


## MEMORANDUM AND ORDER


     The non-jury trial of the remaining claims in this case
was held on July 5, 2011.  The court herein will state its
findings of fact, conclusions of law, and the grounds for the
resolution of certain particular issues.


## 1.  The Plaintiffs' Claims.

     Plaintiff Rockwood Strategies claims that defendant
Curran breached a contract between Rockwood Strategies, LP and
the entity called "Curran for Senate".  (Doc. 1, Count I).
Plaintiff Shafik claims that defendant Curran committed the

tort of fraudulent misrepresentation and thereby injured plaintiff Shafik.  (Doc. 1, Count III).  Plaintiff Shafik claims that defendant Curran committed the tort of intentional infliction of emotional distress and thereby injured plaintiff Shafik.  (Doc. 1, Count VI).  The court dismissed all other claims in the complaint.

The court has diversity jurisdiction under 28 U.S.C. § 1332.  The parties consented to have a magistrate judge preside.  There was no jury demand.

The following are the findings of fact and the conclusions of law of the court made from the evidence presented at trial pursuant to Rule 52 of the Federal Rules of Civil Procedure.  Following the findings of fact and conclusions of law, we discuss certain factual and legal issues.

2.  **Findings of Fact**

1.   The plaintiff, Ryan Shafik, is an adult individual residing at 421 Poplar Avenue, New Cumberland, Pennsylvania.

2.   The plaintiff, Rockwood Strategies, LP, is a Pennsylvania limited partnership, with its registered business address at 421 Poplar Avenue, New Cumberland, Pennsylvania. The principal partner of Rockwood Strategies is Ryan Shafik.

3.   The defendant, John F. Curran, III is an adult individual.  The address of defendant Curran at all material times was in North Carolina or in Maryland.

4.   On August 3, 2009, plaintiff Shafik met with defendant Curran in Gettysburg, Pennsylvania.  The meeting came about because Shafik was interested in obtaining a contract for his political consulting firm to manage a political campaign and because Curran had expressed to Larry Helminiak, a politically active Republican in Maryland and an acquaintance of Shafik, that he (Curran) was interested in becoming a

Republican candidate to be a United States Senator from
Maryland.

5.   At the Gettysburg meeting, Shafik decided that
Curran was "definitely running", talked with Curran about
Curran's business, and presented a sample campaign budget to
Curran.

6.   Curran told Shafik at the Gettysburg meeting that
he could raise millions of dollars in a political campaign and
that he had no problem calling people for money.  Shafik
decided that Curran was clearly willing to raise money.

7.   Curran told Shafik at the Gettysburg meeting to go
forward with steps to cause Shafik and Rockwood Strategies to
work for Curran's campaign.

8.   Curran made statements to Shafik at the Gettysburg
meeting that caused Shafik to believe that Curran would himself
contribute millions of dollars of his own money to his
campaign.

4

9.   After the Gettysburg meeting, Shafik began to assemble a campaign management team for Curran.

10.   Following the Gettysburg meeting, Shafik prepared the "Memorandum of Agreement for John (Jef) Curran for United States Senate" ("the contract"), which contained the terms of Curran's engagement of Rockwood Strategies, LP to manage his Senate campaign.

11.   The contract was drafted by the plaintiffs.

12.   The contract does not contain any provision for its termination by either party.

13.   The contract does not contain any provision concerning the amount that would be spent in the campaign.

14.   The contract does not contain any provision concerning a commitment by Curran to contribute any particular amount of his own money to the campaign or stating that he would make any contributions.

5

15.   Shafik was influenced in deciding to contract with Curran for Senate by representations made by Curran about his financial condition and his intentions as to contributions to the campaign.

16.   Shafik, in drafting the contract after having heard Curran speak of his financial condition, did not include in the contract any commitment on the part of Curran to personally participate in the funding of the campaign at any particular level.

17.   Shafik and Curran signed the contract on August 17, 2009.

18. Curran had the right under the contract as the principal of Curran for Senate to approve or disapprove expenditures by Rockwood Strategies.

19.   On August 17, 2009, Curran instructed Shafik to move forward with developing a "whatever it takes" campaign plan and budget.  Shafik developed and, on August 31, 2009,

submitted to Curran a "whatever it takes" campaign budget proposing an expenditure of twenty million dollars for Curran's Senate campaign.

20.   On October 18, 2009, Curran communicated to Shafik that he was terminating the contract.

21.   Rockwood Strategies did not perform any services under the contract after October 18, 2009.

22.   Rockwood Strategies did not incur any direct mail, literature, electronic media, television, or radio costs on behalf of Curran for Senate.

23.   Rockwood Strategies, Shafik and/or Curran hired people to work on the Curran campaign.

24.   Rockwood Strategies, Shafik and/or Curran made expenditures and incurred debts in furtherance of the Curran campaign.

25.   Although Rockwood Strategies made expenditures and incurred debts in furtherance of the Curran campaign, the plaintiffs at trial did not present evidence of amounts that Curran for Senate owed to Rockwood Strategies for paid or unpaid debts incurred by Rockwood Strategies pursuant to the contract.

26.   The plaintiffs did not present proof of Rockwood Strategies' payments made or debts incurred attributable to the Curran for Senate contract, except for the payments that were made to Attorney Canfield.

27.   Curran reimbursed Rockwood Strategies for the payments that Rockwood Strategies made to Attorney Canfield.

28.   Neither Curran for Senate nor Curran paid to Rockwood Strategies any of the fourteen $2,000 monthly payments that Curran for Senate promised to pay to Rockwood Strategies under the contract's monthly retainer fee provision.

29.   Shafik believed that Curran had personal wealth in excess of twenty million dollars based upon statements made by Curran to Shafik and based upon things that Shafik heard from Helminiak and read in newspapers about Curran and about Curran's company, Gargolyes, Inc.

30.   Shafik believed that it was the intention of Curran to contribute money from his personal wealth to the campaign.

31.   The plaintiffs did not present evidence at trial upon which any finding can be made as to Curran's personal wealth or as to the truth of any representations Curran made to Shafik about his personal wealth.

32.   The plaintiffs did not present evidence at trial upon which a finding can be made as to Curran's company, his business or his education or as to the truth of any representations Curran made to Shafik about his company, his business or his education.

3. **Findings of Fact Discussion**.

The plaintiffs' Proposed Findings numbers 10, 11, 12 and 13 are not included because they are not shown by the plaintiffs to be relevant.

The plaintiffs' Proposed Finding 19 is not included as stated.  It contains a generalization and a summary as to statements attributed to Curran.  Specific statements made to a witness by Curran would be considered as potential findings, but the plaintiff has not adequately indicated exactly what was said or the context.  There is strong evidence that Curran not made a statement before the contract was signed that he would fund $20,000,000 of the campaign with his own money.  The attribution of statements to Curran that he had vast wealth and had the ability to provide $20,000,000 to finance his campaign does not advance the breach of contract claim.

Numbers 20 and 21 of the plaintiffs' Proposed Findings are included.  But we do not find that Curran's request to review a "whatever it takes" budget and his subsequent consideration of a budget supports an inference that the

contract incorporated any particular budget amount.  We do not find that Curran's request to review a "whatever it takes" budget in combination with representations about his personal wealth constituted a fraudulent misrepresentation because there is no proof of the untruth of his statements about his personal wealth.

Plaintiffs' Proposed Finding number 22 is rejected. The plaintiffs have not shown the grounds for the inference of an acceptance of a particular budget amount from the mentioned acts.  The connotation of "acceptance" as used by the plaintiffs is not explained.

The plaintiffs' Proposed Findings do not include proposed findings as to contractual amounts owed by Curran to plaintiff Rockwood Strategies.  The Proposed Findings relate that Curran for Senate and Curran retained Andrew Emerick, Emily Gates and William Canfield.  They also relate that Curran for Senate and Curran leased an office from Merrill Properties. The Proposed Findings do not include statements of particular

unpaid obligations of Rockwood Strategies to Emerick, Gates, Canfield or Merrill Properties.

In Proposed Finding 29, the plaintiffs ask that a finding be made as to particular budget components.  Particular budget components are not relevant.  Curran for Senate and Curran retained the contractual right to approve and to disapprove actual expenditures.  While Rockwood Strategies has the right to compensation from Curran for unpaid Rockwood Strategies expenses and debts, and for the monthly retainer fees, media expenditures that might have been made are not relevant.

The plaintiffs' Proposed Findings do not set forth amounts paid by or owed by Rockwood Strategies to other persons or entities on behalf of Curran for Senate that remain unpaid by the defendant, and the plaintiffs' evidence did not establish those amounts.

**4.  Conclusions of Law**.

1.  Pennsylvania law is applicable to the plaintiffs' claims against the defendant.

2.  The Memorandum of Agreement signed August 17, 2009 by Shafik for Rockwood Strategies and by Curran for Curran for Senate was a binding contract.

3.  The contract between Rockwood Strategies and Curran for Senate was breached by Curran for Senate in that Curran for Senate acting through Curran declared its termination of the contract without a basis in law to terminate the contract and in that Curran did not pay the monthly retainer fee or for expenses incurred by Rockwood Strategies.

4.  Defendant Curran as the candidate for public office whose campaign is the subject of the contract and who signed the contract on behalf of Curran for Senate is liable for the monetary damages incurred by Rockwood Strategies as a result of the breach of the contract by defendant Curran.

5.   The contract imposes a duty upon Curran for Senate to pay $28,000 in retainer fees to Rockwood Strategies.

6.   In the absence of a basis in fact and in law to terminate the contract, Curran does not have a basis to avoid payment of $28,000 to Rockwood Strategies.

7.   Defendant Curran is liable to the plaintiff Rockwood Strategies in the amount of $28,000.

8.   The plaintiff has not proven the elements of the tort of fraudulent misrepresentation.

9.   The plaintiff has not proven the elements of the tort of an intentional infliction of emotional distress.

5.   **Discussion of Particular Issues**.

   A.   **The Issue of Contract Termination**.

   The contract contained no termination clause.  The plaintiff argues that the non-inclusion of a termination clause was purposeful and reasonable in that substantial work can be

14

performed by the contracting consultant in a campaign

consultation and campaign management contract before the

candidate's committee begins to make payments under the

contract.  The contract could have been structured to provide

for earlier compensation of Rockwood Strategies for services

necessarily performed but not subject to the commission

provisions.  Although the contract could have been structured

so as to provide for earlier compensation of Rockwood

Strategies for its work, this contract was not structured that

way.  We construe the contract not to have afforded Curran the

right to terminate the contract when and as he did.  At trial,

he made no showing of good cause to terminate the contract.  As

elsewhere explained, he had the contractual right to decline to

approve any expenditures subject to percentage commission

payments to Rockwood Strategies and he had the right as the

candidate to avoid costs under the contract but for the monthly

retainer fees, which fees he had contracted to pay without

reservation or condition.  He could insofar as the contract was

concerned decline to become a candidate or could withdraw as a

candidate and stop campaigning.  But he could not without good

cause unilaterally negate his contract commitment to pay the monthly retainer payments.

No issue of a failure to mitigate was raised by the defendant.  We will not *sua sponte* raise the issue.

Additionally, a finding that Curran had good cause to terminate the contract is not justified.  There is no evidence of good cause to terminate.

**B.   Defendant Curran's Liability Under the Contract that He Signed on Behalf of Curran for Senate**.

Curran is liable for monetary damages arising from the breach by Curran for Senate of the contract between Rockwood Strategies and Curran for Senate.  *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273 (5th Cir. 1994) (applying Pennsylvania law); *Murray v. Haggerty*, 2 Pa. D. & C.5th 338 (Lackawanna County Ct.Com.Pl. 2006).

C.  **Whether Curran Contractually Committed to Providing
Funding in a Certain Amount**.

Rockwood Strategies presented no documentary evidence
that Curran committed to some particular level of personal
contributions to the prospective campaign prior to the
contract.  The documentary evidence (i.e., the copies of the e-
mails) supports the contrary inference.

The first e-mail reflecting that Curran had committed
to contributing some amount of money to the campaign account is
the e-mail dated October 2, 2009 from Andrew Emerick to Curran.
The first e-mail reflecting that a certain amount had been
committed was the e-mail of October 14, 2009 from Emerick to
Curran and the amount according to Emerick was $200,000.  This
amount, it was indicated by the correspondence, would cover
past, ongoing and future campaign expenditures.  The amount was
not deposited.  We agree with plaintiff Rockwood Strategies
that its unreimbursed expenses and unpaid debts were owed by
Curran to Rockwood Strategies under the contract.  But Curran
is not contractually committed to pay $200,000 to Rockwood.
That was an amount that Curran had said that he would deposit

17

to pay Rockwood Strategies expenses.  His statement does not relieve Rockwood Strategies of proving expenses or entitle Rockwood Strategies to the balance of the $200,000 that exceeded expenses.  As already noted, the plaintiff did not at trial prove particular unpaid expenses and debts, and so has not proven entitlement to any of the $200,000.

### D.  **Fraudulent Misrepresentation**.

Shafik's claim of fraudulent misrepresentation will be deliberated with reference to Section 525 of the Restatement 2d, Torts:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Mere allegations of the violation of an agreement do not establish the tort of fraudulent misrepresentation.  *See Vallino v. Columbia Acc. & Health Ins. Co.,* 6 Pa. D. & C.3d 434 (Allegheny County Ct.Com.Pl. 1978).

18

The misrepresentations that Shafik alleges that Curran made are:

1.  that Curran's company, Gargolyes, Inc., was highly successful and profitable;

2.  that Curran had a high net worth capable of funding his U.S. Senate campaign;

3.  that Curran had two Masters of Business Administration (MBA) degrees from Johns Hopkins University;

4.  that Curran had extensive military experience; and

5.  that Curran was going to personally self-fund his campaign in the amount of twenty million dollars.

The plaintiff presented no proof at trial that any of the first four representations was false.  The plaintiff's

19

Proposed Findings of Fact do not contain proposed findings to
be made by the court based upon the evidence that any of these
statements attributed to Curran was false.[1]  To prove
misrepresentation, it is necessary to prove the untruthfulness
of statements alleged to have been untruthful.

Shafik's evidentiary reliance upon news articles in
which Curran is quoted to support contentions of
misrepresentations by Curran is not consistent with Rule 801,
et seq. of the Federal Rules of Evidence.  Shafik may have in
fact relied upon these articles as containing accurate reports
of statements made by Curran.  But the inference that Curran
had made such representations to a news reporter or to some
other person can not be accepted under the Rules of Evidence as
true.

The plaintiffs' proposed finding that Curran
represented that he was going to personally fund his campaign

---

1.  The only finding proposed by the plaintiffs as to the matter
of alleged falsehoods is at Doc. 60, number 56, a proposed general
finding that Curran made knowingly false representations.

in the amount of twenty million dollars is not accepted for the
following reasons.  As for the contract claim, as already
stated, the representation if it was made was not made before
the contract was entered because it was clearly an open issue
after the contract was entered how much Curran would provide to
his campaign.  In any event, the contract could have but did
not include any promise of Curran that he would fund some
amount.

     As to the claim that Curran stated that he would
personally put twenty million dollars into the campaign, which
really goes more to the contract claim then to the fraud
claims, the witnesses' recollections of times, places, contexts
and words were too imprecise to support by a preponderance of
the evidence a finding of some specific representation by
Curran.  The extent and the nature of Shafik's reliance were
also not established.

     The plaintiff asserts that Curran used his company,
Gargoyles, Inc., to defraud numerous Gargoyles stock investors,
that Curran knew when Curran for Senate entered in to the

21

contract with Rockwood Strategies on August 17, 2009 that he
had defrauded Gargoyles stock investors, that Curran did not
have a net worth sufficient to support a twenty million dollar
Senate campaign, that Curran does not have two MBA degrees from
Johns Hopkins University and that Curran lied about his
extensive military experience.  No evidence establishing the
falsehood of any of these stated representations was presented
at trial.  Accordingly, we have concluded that the elements of
the tort of fraudulent misrepresentation were not proved, and
we will direct that judgment be entered in favor of the
defendant on that claim.

### E. __Intentional Infliction of Emotional Distress__.

Plaintiff Shafik's theory of an intentional infliction
by defendant Curran of emotional distress on plaintiff Shafik
incorporates a contention that it is proven that defendant
Curran intentionally and recklessly made false statements to
Shafik.  It is not proved that defendant Curran made false
statements to Shafik.  Therefore, the plaintiff has failed to
prove essential elements of this cause of action.  Accordingly,

we will direct that judgment be entered in favor of the
defendant on that claim.

### F.  **Measure of Damages**.

The claim of plaintiff Rockwood Strategies of a breach
of contract by defendant Curran is the claim upon which relief
will be granted.

The plaintiffs' Proposed Findings of Fact and
memorandum do not contain proposed findings of fact itemizing
damages that plaintiff Rockwood Strategies believes to be due
to it for breach of contract.  The plaintiff seeks a recovery
of $2,325,125.00.  That amount assumes the expenditure by the
campaign of $20,000,000.00 and assumes the application of a 15%
commission.  Although plaintiff Shafik is the only fraud count
plaintiff and plaintiff Rockwood Strategies is the only
contract claim plaintiff, the plaintiffs jointly seek
$2,325,125.00 on the contract claim and $2,325,125.00 on the
fraud claim.

Plaintiff Rockwood Strategies is entitled under the contract to recover its retainer fee of $28,000.00, a percentage of any expenditures in the enumerated media expenditures categories and other actual expenses incurred by Rockwood Strategies.  But Rockwood Strategies did not put into evidence at trial adequate proof of expenditures made by it. Its damages theory that it is entitled to recover from Curran 15%[2] of the budgeted amounts for mail costs, internet and electronic media costs, and radio and television advertising (up to $1,500,000 and 12% over that), even though actual expenditures were not made, is not accepted.  There was no agreement by Curran to spend the budgeted amounts or to spend any particular amount.  The approval of a budget, assuming the approval of the budget, was not tantamount to an agreement to spend the budgeted amount nor was it an agreement to spend the candidates' personal money.

No evidence was presented of Shafik's mileage.

_____

2.  Although not material to the outcome of this case, we note that the Memorandum of Agreement provided for services to be provided for a fee of "no more than . . . 15%".  The claim stated now, without explanation, is for 15%.

There was evidence presented at trial of unpaid debts incurred by defendant Curran to April Rose, to Merritt Properties, to Andrew Emerick and to Emily Gates.  But Rockwood Strategies did not present evidence that it paid these debts incurred directly by Curran, that it owes these persons and entities sums, or what particular sums owed to these persons and entities based upon Curran's promises remain unpaid.  These other persons and entities are not plaintiffs.

The plaintiffs' evidence does not support its theory that the amount to be contributed to the campaign by the candidate had been agreed to by the candidate.  The Agreement contains no provision for any particular level of expenditures. The evidence presented at trial indicates that Rockwood Strategies and Ryan Shafik were obtaining the approval of Curran for each particular expenditure that was being made during the months of August, September and October of 2009, and also that there was an ongoing dialogue about how large the campaign budget should be and how much would be contributed by Curran.  We do not find there to be a reasonable basis for an award of damages based upon the application of a 15% factor to

25

the hypothetical expenditure of $20,000,000.  We will not,

accordingly, discuss mitigation.

**6.  <u>The Defendant's Arguments</u>**.

The defendant's post-trial Memorandum presents

arguments relating to the issue of applicable law.  The

defendant also argues that a legal campaign under federal law

and Maryland law never came into existence.  He argues that, in

that a legal campaign did not ever come into existence, he

could not lawfully make contributions to a campaign.  The

defendant also argues that he was not the contracting party,

that the contracting party was Curran for Senate, and that he

is not correctly as a matter of law held responsible for the

commitments of Curran for Senate.

It is established by the plaintiffs that Curran had

satisfied the Federal Election Commission requirements to

become a candidate as of October 15, 2009.  But it is not a

condition of the contract with Rockwood Strategies that the

parties' commitments under the contract were dependent or

contingent upon Curran's formal candidacy.  We are not

26

presented with a situation where an outside agency prevented a

campaign from going forward.  Defendant Curran does not show

there to be any materiality to the matter of whether and when

he had officially become a candidate.  Nor is it material that

he did not pursue his campaign, except insofar as the

determination is made herein as to the contractual commitments

for which he is and for which he is not liable.  Nor is

anything that defendant Curran has presented as to federal or

Maryland law material.  The choice of Pennsylvania law that we

have made results in the application of Pennsylvania law in

construing and applying the contract.  Maryland contracts law

is not shown by the defendant to yield a different result.

There is no material issue involving federal election laws or

Maryland law.


7.  **Conclusion**.

It will be ordered that the Clerk enter judgment in

favor of the plaintiff Rockwood Strategies, LP, and against the

defendant, on Count I, in the amount of $28,000 and in favor of

the defendant and against plaintiff Shafik on Counts II and

III.  An appropriate order follows.


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  August 16, 2011.